# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                 NO. 10-CR-02466-WJ

DAVID BAUER,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION
## FOR COMPASSIONATE RELEASE

THIS MATTER is before the Court following the August 4, 2021 hearing on Defendant Bauer's Motion for Compassionate Release (Doc. 71) (the "Motion") pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). Having considered the parties' written and oral arguments and having carefully reviewed the record in this matter, the Court finds that the Motion is well-taken and is therefore granted.

### BACKGROUND

In 2010, Defendant committed three bank robberies. During the first robbery, Defendant placed his hand inside of his blazer pocket in a way that suggested to bank employees that he was armed, and threatened to shoot bank employees if they did not "give [him] all the money." PSR at ¶¶ 9-11. Defendant left the first bank with $2,400. *Id.* at ¶ 14. During the second robbery, Defendant actually possessed a firearm, which he pointed at multiple tellers while demanding "50s, and 100s or I'll start shooting people." *Id.* at ¶ 15. Defendant left the second bank with $10,164.93. *Id*. at ¶ 23. During his third and final robbery, Defendant pointed a firearm at the bank manager's back and threatened to take a hostage. *Id.* at ¶¶ 25-26. The Defendant left the third bank with $4,069.84. *Id*. at ¶¶ 27-29. Defendant was arrested following the third robbery. *Id.* at ¶¶ 30-34.

On August 25, 2010, Defendant was indicted on Bank Robbery (Count 1); Armed Bank Robbery (Counts 2 and 3); Using, Carrying, and Possessing a Firearm in Furtherance of a Crime of Violence (Counts 4 and 5); and Felon in Possession of a Firearm and Ammunition (Count 6). Doc. 16. On August 29, 2012, Defendant entered a guilty plea to all six counts of the indictment. Docs. 16, 54, 55, 58. On November 29, 2012, Defendant was sentenced to three consecutive terms of life imprisonment. Docs. 58, 59. He received concurrent terms of life imprisonment for Counts 1, 2, and 3; two consecutive terms of life imprisonment for Counts 4 and 5; and a term of 180 months imprisonment for Count 6, which was ordered to run concurrently to the sentence imposed for Counts 1, 2, and 3. *Id*. Defendant has remained in custody since August 10, 2010. Doc 3.

On May 4, 2021, Defendant filed the subject Motion for compassionate release due to his deteriorating health, requesting release to the custody of his previous attorney, Brian Pori.  Doc 71.  Brian Pori has provided the Court with a note endorsing this arrangement, and commented during the hearing that he was aware of the potentially heavy responsibilities that could stem from this arrangement, and that he is currently arranging for hospice-type care in event it is needed. Doc. 71-4.

In support of his Motion, Defendant submits that he is no longer able to undertake the rudiments of life on his own. Doc. 71 at 8. He is 65 years old and gets around by way of electric wheelchair, which he needs assistance to get in and out of. *See id*. at 8, 14. He is currently suffering from decompensated cirrhosis of the liver, which has resulted in several comorbidities, *id*. at 9, to include portal hypertension, varices, ascites, hypersplenism and encephalopathy, a decline in brain function resulting from severe liver disease, *id*. at 9-10. Defendant's health is only expected to further deteriorate. *Id.* at 19-20.

In 2019, two Bureau of Prisons ("BOP") doctors stated that they did not believe Defendant would ever be able to function in a correctional setting. *Id*. at 10-11. Furthermore, in 2020, another

2

BOP doctor found that Defendant's "disease progression qualified him for consideration of a sentence reduction based on his 'end of life trajectory.'" *Id.* at 18. In a Medical Summary dated December 9, 2020, the Gastroenterology department of the Mayo Clinic indicated that Defendant would have a life expectancy "in the 2 to 5-year range or longer." *Id.* at 12. The Mayo clinic went on to state that this would be altered if Defendant developed any "decompensating event." *Id.* at 12. During the hearing, it was noted that since the filing of Defendant's Motion, Defendant has suffered from eight seizures, at least one of which potentially qualified as a "decompensating event."

Defendant was initially held at USP Coleman in Florida, but as a result of his decline in health and his doctors' assessment that he was unable to function in a correctional setting, he was transferred to Federal Medical Center in Rochester, MN ("FMC Rochester") on April 24, 2019. *Id.* at 6. Defendant has resided in the inpatient clinic within FMC Rochester since February 2020. *Id.* at 18. Defendant is not expected to leave the inpatient area of FMC Rochester, and noted during the hearing that being surrounded by dying inmates in the inpatient area has been an emotional challenge. *Id*. at 19-20.

In inpatient care, Defendant has assistance from a Nurse Attendant each day in getting out of bed and getting dressed. *Id*. at 14. Defendant has lost the ability to control his left arm and therefore it is strapped to his wheelchair armrest to prevent any potential damage. *Id*. at 14. A Nurse Assistant helps Defendant place an adaptive device on his hand so he can hold a toothbrush and hairbrush. *Id.* Defendant also uses an adaptive device to eat. *Id.* at 15. Defendant does not have the strength to undo the Velcro straps that hold these adaptive devices in place. *Id*. A Nurse's Assistant shaves Defendant three times a week and helps brush his hair. *Id*.

Defendant has been incarcerated a number of times and has run into a series of issues with the BOP. Doc. 74 at 4. Over the course of his incarcerations, Defendant has been sanctioned for

violating BOP polices 40 times. *See* Doc. 74-1. *Id.* During his current incarceration, Defendant has been sanctioned 10 times, once for possessing a weapon in 2014. *Id.*

Prior to the 2010 bank robberies, Defendant had 17 prior convictions. PSR at ¶¶ 90-106. Defendant's prior convictions include Burglary of a Dwelling, Escape, Armed Bank Robbery, and Armed Robbery and Felon in Possession of a Firearm. *Id.*

## LAW

18 U.S.C. § 3582(c)(1)(A) states that the Court may reduce a term of imprisonment if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that:

> **(1)(A)** Extraordinary and compelling reasons warrant the reduction . . .
> **(2)** The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> **(3)** The reduction is consistent with this policy statement.[1]

U.S.S.G. § 1B1.13.

Extraordinary and compelling reasons are expanded upon in the application notes:

> (A) **Medical Condition of Defendant.**
>   (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.
>   (ii) The defendant is--
>     (I) suffering from a serious physical or medical condition,
>     (II) suffering from a serious functional or cognitive impairment, . . .
>     that substantially diminishes the ability of the defendant *to provide self-care* within the environment of a correctional facility and from which he or she is not expected to recover.

---

[1] The Court notes it is not bound by the policy statement, USSG § 1B1.13, cmt. n.1, under *United States v. Maumau*, 993 F.3d 821, 832, 2021 WL 1217855, at *7 (10th Cir. 2021). However, the Court is also charged with exercising its discretion in determining whether a defendant meets the "extraordinary and compelling" requirement of § 3582(c)(1)(A), and the Court has historically regarded the policy statement as an appropriate model upon which to base compassionate release analyses. *Id.*

> **(B) Age of the Defendant.**
> The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

*Id.*, App. Note 1 (A)-(B).

The factors set forth in 18 U.S.C. § 3553(a) that are relevant to these facts are as follows:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
> **(2)** the need for the sentence imposed--
> > **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > **(B)** to afford adequate deterrence to criminal conduct;
> > **(C)** to protect the public from further crimes of the defendant; and
> > **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> > . . .
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a).

## DISCUSSION

### § 3582(c)(1)(A) Analysis

Defendant is 65 years old, has been imprisoned for at least ten years, and has a deteriorating health condition. Defendant therefore satisfies § 1(B) of the policy note.

Defendant is suffering from a "serious and advanced illness with an end of life trajectory," end-stage organ disease. *Id.* Decompensated cirrhosis represents a serious physical condition, and Defendant is "suffering from a serious functional . . . impairment," "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13 App. Note 1(A)(i)(ii)(I-II). Defendant is unable to get in and out of bed without the assistance of medical staff. Defendant also

relies on medical staff to brush his teeth, shave, and put on adaptive devices in order to eat.[2] Defendant thus satisfies § 1(A) of the policy note.

The Government does not dispute Defendant's deteriorating physical condition, and indeed acknowledged during the hearing that Defendant's death is imminent and that his medical records support a finding that he is almost completely debilitated. However, the Government does argue that Defendant has denied treatment at times and has exacerbated his condition through this denial. During the hearing, Defendant admitted this behavior, but maintained that it was a result of the difficulties and "anger" inherent to finding out that his death was imminent, and being relocated to the inpatient ward where he is surrounded by other inmates struggling with the same end of life reality. The Court find's Defendant's claims compelling and that his refusal to accept treatment does not weigh against him under the § 3582(c)(1)(A) analysis.

In its response to the Motion, the Government also disputed Defense Counsel's characterization of Defendant as no longer presenting a danger to the community. *See* Doc. 74 at 14. Government based their assessment on Defendant's criminal history, which is admittedly extensive. However, during the hearing, when asked whether Defendant could indeed pose a danger to the community if released, the Government responded that it was "unknown."

Given the Defendant's current physical state, discussed at length above, the Government's argument is not compelling. Defendant has provided extensive medical records evincing numerous and serious debilitations, and the Government has offered nothing to undermine these records. It is difficult for the Court to envision Defendant endangering the public in his electric wheelchair with a dysfunctional arm and an inability to even clean himself. The irreparable state of Defendant's health demonstrates that he is no longer capable of endangering the public and thus,

---

[2] While unclear in the record, the Court also assumes that Defendant requires assistance in conducting other activities crucial to self-care, such as bathing. As with other terminally ill and elderly individuals not in detention, assistance with these activities often requires full-time skilled nursing, and weighs heavily in favor of release under § 1(A).

does not pose a danger to the community under § 1B1.13(2) and 18 U.S.C. § 3142(g). Accordingly, Defendant has demonstrated "extraordinary and compelling reasons" to reduce his sentence under § 1B1.13.

### § 3553(a) Analysis

In addition to finding that extraordinary and compelling reasons warrant a reduction in sentence, the Court must also weigh the § 3553(a) factors in order to grant Defendant's Motion. Factors 1, 2 and 6 are relevant here. *See* § 3553(a) ("(1) [T]he nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed … to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense … to afford adequate deterrence to criminal conduct … to protect the public from further crimes of the defendant …; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct…").

As to the first factor, there is no denying that Defendant committed serious crimes, and that Defendant's extensive criminal history weighs against granting the Motion. Defendant was a career criminal with 23 convictions, including convictions for violent crimes. PSR at ¶¶ 1-3, 90-106.

As to the second factor, the Court finds that the inability of Defendant to harm anyone in the community as a result of his terminal condition and physical limitations most compelling. While a sentence should certainly reflect the seriousness of an offense and afford adequate deterrence to criminal conduct, these portions of the second factor are not as convincing as the near-assurance that Defendant's physical limitations will "protect the public from further crimes of the defendant." § 3553(a)(2)(C). The second § 3553 factor therefore weighs in favor of release.

As to the sixth factor, granting Defendant's Motion for Compassionate Release would not create "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See* 18 U.S.C. § 3553(a)(6). When Defendant was sentenced, he walked out of the courtroom on his own. Doc 71 at 8. Defendant is now wheelchair bound, reliant on medical staff to care for him and approaching the end of his life due to decompensated cirrhosis. Defendant is not being released to live a normal life and reacclimate with society, but to spend the remainder of his life in an electric wheelchair grappling with a number of medical issues that will soon claim his life. Accordingly, the sixth factor weighs in Defendant's favor, and the Court finds that together the § 3553(a) factors do not caution against release.

## CONCLUSION

Having considered the applicable § 3553(a) factors and having determined that Defendant meets the "extraordinary and compelling" requirement of § 3582(c), the Court hereby finds that modification of Defendant's sentence is appropriate given his end-of-life trajectory and the extreme limitations on his ability to commit further crimes if released. For these reasons, and those otherwise set forth in this Memorandum Opinion and Order, Defendant's Motion for Compassionate Release is hereby **GRANTED**.

**IT IS SO ORDERED.**

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE